UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:07-CV-002

PAULA OSBORNE
and
CAROLYN MCNEILL                                                            PLAINTIFFS

V.

GERALD PINSONNEAULT
and
SITTON MOTOR LINES, INC.                                                   DEFENDANTS

MEMORANDUM OPINION AND ORDER

These matters are before the Court upon a motion by the Defendants for partial summary

judgment on the Plaintiffs' claim for punitive damages (DN 20) and a motion by Defendants for

summary judgment on the Plaintiff's claims of negligent entrustment and negligent hiring, training,

and supervision (DN 21).  Fully briefed, these matters are ripe for decision.  For the following

reasons, the Defendants' motion for partial summary on the Plaintiff's punitive damages claim is

**DENIED** and the Defendants' motion for summary judgment on the negligence claims is **DENIED**.

I. FACTS

A. The Accident

This personal injury action arises out of a motor vehicle accident that occurred on November

30, 2004, on the Western Kentucky Parkway westbound in Hopkins County, Kentucky, when a

tractor-trailer owned by Defendant Sitton Motor Lines, Inc. ("Sitton") and driven by Defendant

Sitton employee Gerald Pinsonneault ("Pinsonneault") collided with a vehicle driven by Plaintiff

Paula Osborne ("Osborne"). Plaintiff Carolyn McNeill ("NcNeill") was the front-seat passenger in

Osborne's car.  At the time of the accident, it was raining and the road was wet and traffic was

stopped because of a previous accident. The Plaintiffs were traveling in the left (passing) lane as they crested a hill and the Sitton tractor-trailer driven by Pinsonneault was in the right lane a short distance behind and to the right of the Plaintiffs' car.  At some point, the Plaintiffs changed into the right lane in front of the tractor-trailer.  Pinsonnealt attempted to avoid hitting the Plaintiffs' vehicle by steering onto the right shoulder of the road but the Plaintiffs simultaneously veered onto the right shoulder as well. The Sitton tractor-trailer driven by Pinsonneault then collided with the vehicle containing the Plaintiffs.

**B. Sitton's Hire of Pinsonneault**

Pinsonneault was hired to work  as a professional commercial vehicle driver for Sitton in 2004.  At that time, Pinsonneault was qualified and approved as a commercial vehicle driver by the Federal Motor Carrier Safety Administration; he met all Federal Motor Carrier Safety Administration requirements to operate a commercial vehicle; his commercial driver's license had never been suspended or revoked; he had 14 years of professional driving experience; he had never had a motor vehicle accident; and he not had been cited for a moving traffic violation in more than a decade.  Sitton's pre-employment investigation into Pinsonneault's criminal and driving history, however,  had revealed that despite Pinsonneault's indications to the contrary,  Pinsonneault had been convicted of driving under the influence in 1975 and 1986; his driver's license had been suspended in 1986 and 1994; he had been convicted for passing bad checks in 1982; and he was not allowed to drive commercial vehicles in Canada because of his DUI convictions.

**C. Sitton's Training and Supervision of Pinsonneault**

The Federal Motor Carrier Safety Regulations ("Regulations"), promulgated by the United States Department of Transportation, establish safe operating requirements for commercial vehicle

drivers, carriers, vehicles, and vehicle equipment. The Regulations provide that "[e]very motor carrier shall require every driver to record his/her duty status for each 24 hour period..." and that every driver must "keep their records of duty status current to the time shown for the last change of duty status." 49 CFR § 395.8(a) and (f)(1).  The Regulations also provide a  "graph grid" which "must be incorporated into a motor carrier record-keeping system..." 49 CFR § 395.8(g).  The graph grid separates the day into 24 hours and separates each one hour period into four 15-minute segments.  Based on these regulations, Sitton instructed its employees that they could maintain logbooks which reflected their activities (such as whether they were driving or not driving) in 30 minute  intervals.

Sitton's audit of Pinsonneault's logbook established that there were 11 days wherein Pinsonneault failed to make any logbook entry between October 2004 and January 2005 and that one of these missing days was just three days before Pinsonneault's collision with the Plaintiffs. This audit also revealed Pinsonneault 's logbook contained  nine "critical" violations, including six for 14-plus hours on duty,  and 37 "other" violations including 12 for "speed over maximum miles per hour."

## II. LEGAL STANDARD

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.  The moving party bears the initial burden of specifying the basis for its motion and of identifying the portion of the record which demonstrates the absence of a genuine issue of material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this

burden, the non-moving party themselves thereafter must produce specific facts demonstrating that a genuine issue of fact exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986).  The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  "The mere existence of scintilla of evidence in support of the [non-moving party's] position will be insufficient, there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477. U.S. at 252.

### III. ANALYSIS

The Defendants argue that they are entitled to summary judgment on the Plaintiffs' claims for punitive damages;  negligent entrustment; and negligent employment, training, and supervision. The Court will address each of these arguments in turn.[1]

**A. Punitive Damages**

The Defendants  argue that they are entitled to summary judgment on the Plaintiffs' claim for punitive damages because the Plaintiffs have not established that Pinsonneault's conduct was grossly negligent. In Kentucky, a tortfeasor's conduct must constitute gross negligence in order to award punitive damages. Gersh v. Bowman, 239 S.W.3d 567, 572 (Ky. Ct. App. 2007)(citing

---

[1] Neither party contests that Kentucky law applies to the Plaintiff's negligence claims. A forum state's choice of law provisions apply when a federal district court has diversity jurisdiction under 28 U.S.C. § 1332. Anderson , Inc. v. Consol, Inc., 348 F.3d 496, 501 (6th Cir. 2003).  In tort actions, Kentucky applies its own substantive law if there is any significant contact with Kentucky. Vaughn v. United States, 1997 U.S. App. LEXIS 35795 (6th Cir. 1997)(citing Bonnlander v. Leader Nat'l Ins. Co., 949 S.W. 2d 618, 620 (Ky. Ct. App. 1996)).

Kinney v. Butcher, 131 S.W.3d 357, 358-359 (Ky. Ct. App. 2004)). "Gross negligence" is a

"wanton or reckless disregard for the safety of other persons." Id. "It is not necessary that the jury

find the defendant to have acted with express malice; rather, it is possible that a certain course of

conduct can be so outrageous that malice can be implied from the facts of the situation." Id. In

Kinney, the court stated that although "[n]early all auto accidents are the result of negligent

conduct,...few are sufficiently reckless as to amount to gross negligence, authorizing punitive

damages." 131 S.W. at 359.

There are occasions, however, where an unintoxicated driver's conduct can amount to "gross

negligence" in Kentucky.  For example, the Kentucky Supreme Court has held that it was not

unreasonable for a jury to conclude  that a driver showed "extreme indifference to human life"

where the evidence established that when he caused a collision he was 1) running a red light; 2)

driving between 5 and 15 miles over the 55-mile per hour speed limit; 2) watching the television in

his vehicle while driving; and 3) possibly racing another vehicle when he ran a red light and caused

an accident. Brown v. Commonwealth, 174 S.W.3d 421, 427-428 (Ky. 2005).  The Kentucky

Supreme Court has also upheld an award of punitive damages where the driver of a tractor-trailer

secured an 18.5 ton steel coil to the trailer with three chains, even though federal regulations

required at least five under the circumstances, and the steel coil fell off the trailer and struck another

vehicle causing the death of that vehicle's driver. Steel Techs., Inc. v. Congleton, 234 S.W.3d 920

(Ky. 2007).  A Kentucky court has also held that a driver's conduct could constitute gross

negligence where there was evidence that he was traveling at least 34 miles per hour over the posted

speed limit for a curve at night with two passengers in his vehicle. Gersh, 239 S.W. at 572.

Here, the Plaintiff argues that fatigue was a "substantial contributing factor" in

Pinsonneault's collision with the Plaintiffs' vehicle and that a  jury could    conclude that

Pinsonneault was grossly negligent because he "chose to ignore federal regulations regulating hours

of service" which he knew would result in his fatigue and endanger other drivers.  The Defendants

have failed to show an absence of material fact on this issue so as to entitle them to summary

judgment.  Whether the evidence will be sufficient for the Court to instruct the jury at the conclusion

of all the proof is a matter the Court will decide at trial.

**B. Negligent Entrustment and Negligent Hiring, Training, and Supervision**

The Defendants have also moved for summary judgment on the Plaintiffs' claims of

negligent entrustment and negligent hiring, training, and supervision.  In Kentucky, the common law

theory of negligent entrustment is that "one who entrusts his vehicle to another whom he knows to

be inexperienced, careless, or reckless, or given to excessive use of intoxicating liquor while driving,

is liable for the natural and probable consequences of the entrustment." McGrew v. Stone, 998 S.W.

2d 5, 9 (Ky. 1999)(Cooper, J., dissenting).  Kentucky law also recognizes that an employer can be

held liable for the negligent hiring, training, and supervision of its employees.  See, e.g., Turner v.

Pendennis Club, 19 S.W.3d 117, 121 (Ky. Ct. App. 2000)(citing Roman Catholic Diocese of

Covington v. Secter, 966 S.W.2d 286 (Ky. Ct. App. 1998); Ashby v. City of Louisville, 841 S.W.2d

184 (Ky. Ct. App. 1992)). To sustain such a claim, the plaintiff must show that 1) the employer

knew or should have that the employee was unfit for the job; and 2) the employer's hiring of or

alleged  failure to properly supervise the employee created  an unreasonable risk of harm to the

claimant. See, e.g.,  Stalbosky v. Belew, 205 F.3d 890, 894 (6th Cir. 2000);  Delong v. Arms, 2007

U.S. Dist. LEXIS 95184, *30 (2007)(citing Jones v. Lexington H-L Services, Inc., 2004 WL

2914880, *4 (Ky. Ct. App. 2004)).  "The employer is liable only if it knew or should have known

6

of the threat posed by the employee but failed to take remedial measures to ensure the safety of others." Roche v. Home Depot USA, 2005 U.S. Dist. LEXIS 17927, *7 (W.D. Ky. 2005)(citing Airdrie Stud, Inc. v. Reed, 2003 WL 2279649, *1 (Ky. Ct. App. 2003)).

Here, the Plaintiffs' have presented evidence that Sitton knew or should have known that Pinsonneault was routinely falsifying logbooks, in violation of the federal safety Regulations, and driving with fatigue.  As discussed above, Sitton's audit of Pinsonneault's logbook established that there were 11 days wherein Pinsonneault failed to make any logbook entry between October 2004 and January 2005 and that one of these missing days was just three days before Pinsonneault's collision with the Plaintiffs. This audit also revealed Pinsonneault 's logbook contained  nine "critical" violations, including six for 14-plus hours on duty,  and 37 "other" violations including 12 for "speed over maximum miles per hour." The Plaintiffs have also presented evidence which suggests that Sitton instructed its employees that they could maintain logbooks which reflected their activities  in 30-minute  intervals as opposed to the 15-minute intervals which seem to by required by the federal regulations. Based on this evidence, and drawing all inferences in favor of the Plaintiffs, there appears to be a genuine issue of fact as to whether Sitton created an unreasonable risk of harm to the Plaintiffs in its entrustment, hiring, training, and supervision of Pinsonneault and as to whether these actions by Sitton caused the  Plaintiff's harm.  Again, the Court will re-examine the evidence in support of these claims once all the proof is in.  Thus, the Court concludes that the Defendant is not entitled to summary judgment on these claims.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' motion for partial summary judgment on the punitive damages claim is **DENIED** and the Defendants' motion for summary judgment on the aforementioned negligence claims is **DENIED**.

**IT IS SO ORDERED**.

cc: Counsel of Record