UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

Electronically Filed

PAULA OSBORNE
and
CAROLYN MCNEILL					PLAINTIFFS
and
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY				INTERVENING PLAINTIFF

v.						CIVIL ACTION NO.: 4:07CV-2-M

GERALD PINSONNEAULT
and
SITTON MOTOR LINES, INC.			DEFENDANTS

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE CERTAIN PROPOSED EXHIBITS**

In support of their motion to exclude certain exhibits proposed by Plaintiff from evidence at the trial of this matter, Defendants Gerald Pinsonneault and Sitton Motor Lines, Inc. state:

**Factual and Procedural Background**

This personal injury action arose from a November 30, 2004 motor vehicle accident on the Western Kentucky Parkway. Plaintiff's vehicle suddenly changed lanes, forcing Defendants' vehicle onto the shoulder, where the vehicles made contact. Although Plaintiff reported no injuries and refused medical attention at the scene, she hired a personal injury attorney who filed this suit two years later. For over two years, since January, 2007, the parties have litigated the case. The claims of Plaintiff Carolyn McNeill were settled on May 22, 2008 during a settlement conference with United States Magistrate Judge E. Robert Goebel. The claims of Plaintiff Paula Osborne are scheduled for trial commencing April 27, 2009. (DE 60).

On March 2, 2009, Plaintiff filed a list enumerating forty-six (46) trial exhibits and identifying fourteen (14) other items that may be used at trial. (DE 65). Several of those proposed exhibits should neither be admitted as evidence nor shown to the jury during the trial of this action for a variety of reasons.[1]  A description of each inadmissible exhibit, along with the reason it should be excluded, is set out below:

**Exhibit 3** is a copy of the Fed. R. Civ. P. Rule (26)(a)(2)(b) disclosures of Plaintiff's retained economist, Dr. Gilbert Mathis. In *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994), the Court of Appeals held that expert witnesses "were entitled to testify as to their opinion, and rely on inadmissible evidence. Neither their written opinions nor the materials on which they relied were admissible under Rules 702 and 703." In *Dilley v. Chesapeake & O. Ry. Co.*, 327 F.2d 249 (6th Cir. 1964), the Court expressly held that a report containing the opinion of a testifying expert witness is inadmissible hearsay and that its admission into evidence "was prejudicial to defendant's substantial rights." Dr. Mathis' report is inadmissible. If the author is *not* called as a witness at trial, the report is not subject to cross-examination. If the author *is* called as a witness, the report would constitute redundant bolstering of his testimony. Finally, because the jury will be permitted to take and examine all exhibits during deliberations, undue emphasis would be placed upon the report. As a result, Defendants would be unfairly prejudiced by unwarranted reinforcement of the testimony of Plaintiff's expert witnesses. See *United States v. Padin*, 787 F.2d 1071, 1076 (6th Cir. 1986).

**Exhibit 4** is a letter from Plaintiff's employer containing opinions and future projections as to possible lost earnings under various scenarios. The letter contains unsubstantiated opinions and is inadmissible hearsay that is offered for no other reason than to prove the matters asserted

---

1 Although some of the exhibits are included within the scope of Defendants' other motions *in limine*, this motion is specifically addressed to the admissibility of the tangible items set out in Plaintiff's exhibit list (DE 65).

therein. See Fed. R. Evid. 801, 802. It is not admissible as evidence for any reason other than to impeach the author if her trial testimony is inconsistent with that out-of-court statement. Fed. R. Evid. 801(d)(1).

**Exhibit 5** consists of eight (8) pages excerpted from a January, 2007 "Driver's Guide." Apparently, Plaintiff seeks to introduce this exhibit as evidence of the effect of fatigue. (See Plaintiff's Exhibit List, DE 65, page 1). Of course, the pamphlet from which Plaintiff extracted the information is not a scientific treatise. The pamphlet does not qualify as an admissible opinion on the standard of care, nor has Plaintiff identified the source and basis of the information set out therein. Unless the requisite foundations are established, the exhibit must be excluded from the trial of this action.

**Exhibit 7** appears to be a printout from a legal research website that includes a section of the Code of Federal Regulations. The risk of misleading and confusing the jury with several single-spaced pages of technical federal regulations far outweighs any probative value. The Court, not the parties' exhibits, should instruct the jury on the law of the case.

**Exhibit 8** is a copy of a letter from Plaintiff's counsel addressed to Defendant. It contains a remarkably self-serving and conclusory statement indicating that "commercial truck drivers who cause collisions like the one in this case are generally impaired in some way or have violated various federal safety regulations." Plaintiff has indicated that it is being offered to show that he demanded "preservation of evidence." (See Plaintiff's Exhibit List, DE 65, page 2). All of the "evidence" described in the letter were preserved and produced during discovery in this action. The letter's probative value, if any at all, is clearly outweighed by its prejudicial effect. It has no place in the trial of this case.

**Exhibit 9** is a notice to take the discovery deposition of Defendant's corporate representative. Assuming that Plaintiff's counsel seeks to use that exhibit as part of an allegation that Defendants failed to provide some requested discovery, the deadline for bringing any discovery disputes to the attention of the Court expired over a year ago. (See DE 12, paragraph 5, as amended by DE 19). Of course, an alleged discovery dispute is not an appropriate subject for the jury to consider in this personal injury action.

**Exhibit 10** is an unauthenticated printout of electronic data that was downloaded from Defendant's vehicle more than five months after the subject accident. Plaintiff has disclosed no witness who is competent to establish a competent foundation that the equipment used to measure and record the electronic data was properly calibrated and in working order, that the process or system used to obtain, record and analyze the data is reliable and that the information generated by the system is accurate. Fed. R. Evid. Rule 901(b)(9) permits evidence of results of a process or system to be admitted only after producing evidence "describing a process or system used to produce a result and showing that the process or system produces an accurate result." Absent such a foundation, the evidentiary requirement of authentication as a condition precedent to admissibility has not been met and the results of the process or system cannot be admitted as evidence. *Indianapolis Minority Contractors Association, Inc. v. Wiley*, 187 F.3d 743, 748 (7th Cir. 1999).

Pursuant to Fed. R. Evid. Rule 901(b)(9), a party seeking to introduce information derived from an electronic data system must present competent evidence that is sufficient to satisfy two distinct prongs before the information may be admitted into evidence at trial:

(1) Evidence that describes the process or system, and;

(2) Evidence that establishes the accuracy of the process or system.

To meet the first prong, a party must produce a witness who is qualified to describe the system that generated the data. The witness must be familiar with the software used for programming and analyzing data from the system. He or she must be in a position to describe from personal knowledge how the system obtains, records, stores and generates information or data. In most cases, such knowledge is proprietary to the system's manufacturer and it is necessary to call as a witness a representative from the manufacturer, the individual who installed the system for the particular application, and another individual qualified to describe the operation of the system on the particular application.

To meet the second prong, a party must produce evidence to establish the accuracy and reliability of the information generated by the system. The evidence must establish that the system used reliable information and produced accurate results. It is not sufficient merely to show that the device accurately recorded the information received from other sources. Competent evidence must also show that the information received was accurate.

Fed. R. Evid. 802 provides that hearsay is generally inadmissible. However, Fed. R. Evid. 803(6) provides a conditional exception for certain business records. In order to invoke the business records exception to the hearsay rule, a party must produce competent evidence to establish that the proffered records met each of the following requirements:

> (1) it must have been made in the course of a regularly conducted business activity;
> (2) it must have been kept in the regular course of that business;
> (3) the regular practice of that business must have been to have made the memorandum; and
> (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

*Redken Labs., Inc. v. Levin*, 843 F.2d 226, 229 (6th Cir.1988).

Fed. R. Evid. 805 permits the introduction of hearsay within hearsay only if "each part of the combined statements conforms with an exception to the hearsay rule...." Thus, it is necessary to prove not only that the copied information was maintained in the ordinary course of business, but also that the original source of the information had personal knowledge of its accuracy. See *Fraley v. Rockwell International Corp.*, 470 F.Supp. 1264, 1267 ( D.C. Ohio 1979). In order to testify concerning any matter, a lay witness must have personal knowledge of that matter. Fed. R. Evid. 602.

Plaintiff apparently intends to use Exhibit 10 to prove "vehicle speeds and hours driven" on unknown dates, and to comment on information that is not included in the printout. (DE 65, page 2). A copy of the document was provided to Sitton Motor Lines and forwarded to Plaintiff's counsel in discovery. However, Sitton Motor Lines cannot vouch for the system used to obtain and interpret the data, authenticate the data or verify the accuracy or reliability of the information thereon. Plaintiff has disclosed no expert or other witness who is qualified to lay a foundation for the admissibility of the data. In the absence of a competent foundation, Exhibit 10 is inadmissible.

**Exhibit 11** is a summary of the results of a paperwork audit conducted by Defendant Sitton Motor Lines in February, 2005. It lists, without explanation, every technical violation of policy by Defendant Gerald Pinsonneault over the period of his employment, including an approximately equal amount of time before and after the accident at issue in this case. Plaintiff apparently intends to use the exhibit to support an allegation that Sitton Motor Lines should have terminated Mr. Pinsonneault before the accident. Obviously, the future actions of Mr. Pinsonneault were not available to Sitton Motor Lines at the time of the accident and are irrelevant to a determination of what it should have done before the accident. Conversely,

evidence of any unrelated subsequent bad acts of Mr. Pinsonneault that occurred after the accident would be a classic example of unduly prejudicial and clearly inadmissible evidence.

**Exhibit 12** is a questionnaire form that was completed by a person who is not listed on any party's witness list. It constitutes inadmissible hearsay and should not be permitted at trial.

**Exhibit 14** is another questionnaire form that was completed by a person who is not listed on any party's witness list. It includes irrelevant and unduly prejudicial references to misdemeanors and traffic violations in the 1970s and 1980s. It also constitutes inadmissible hearsay and should not be permitted at trial.

**Exhibit 17** is yet another fill-in-the-blanks form that was completed by a person who is not listed on any party's witness list. It is dated more than two years after the accident at issue and refers only to events that took place long after the accident. It is irrelevant, prejudicial, and constitutes inadmissible hearsay. It should not be permitted at trial.

**Exhibit 18** is one page of an employment application filled out more than two years after the accident at issue. It includes irrelevant and unduly prejudicial references to misdemeanors and traffic violations in the 1980s. It also constitutes inadmissible hearsay and should not be permitted at trial.

**Exhibit 19** is a record of disciplinary action taken against Defendant Gerald Pinsonneault in July, 2008. It has no relation whatsoever to the 2004 accident that is the subject of this suit. Evidence of any unrelated bad acts of Mr. Pinsonneault that occurred after the accident or of subsequent remedial measures taken by Sitton Motor Lines would be unduly prejudicial and inadmissible.

**Exhibit 20** is a document containing the opinion of an unidentified person that, under DOT guidelines, the accident at issue was "preventable." Plaintiff apparently seeks to offer it to

support her claim that Defendant Gerald Pinsonneault was negligent. The term "preventable," which is obviously a term of art to the DOT, is not defined or explained in the document. If the jury hears evidence that someone formed an opinion that the accident was "preventable," the jury is likely to erroneously infer that as an admission that Mr. Pinsonneault had been negligent. The resulting prejudice to Mr. Pinsonneault and Sitton Motor Lines would constitute reversible error. See Fed. R. Evid. Rule 403.

Even if "preventable" could somehow be equated to "negligent," Sitton Motor Lines' post-accident safety measures are subsequent remedial measures that are affirmatively excluded from evidence under Fed. R. Evid. Rule 407. The purpose of the Rule is to promote the "social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." See Notes of Advisory Committee on Rules, January 2, 1975.

**Exhibit 21** is a copy of a string of emails containing inadmissible hearsay accounts of the facts of the accident. See Fed. R. Evid. 802. The emails were obviously created by individuals who had no personal knowledge of the event described, and therefore could not testify about the matters therein. See Fed. R. Evid. 602.

**Exhibit 22** is a copy of an email repeating inadmissible hearsay accounts of the accident and lay opinions. See Fed. R. Evid. Rules 701 and 802. The email was obviously created by an individual who had no personal knowledge of the events described. See Fed. R. Evid. 602.

**Exhibit 23** is a copy of a letter from Defendant Sitton Motor Lines to the Federal Motor Carrier Safety Administration. In that letter, dated more than a year after the accident, Defendant details its responses to a routine compliance audit. The "violations" detailed in the letter would mislead a jury and unduly prejudice Defendants. If the letter is shown to the jury, the jurors are

likely to erroneously infer that "violations" in 2005 and 2006 proves that Defendants acted in conformity therewith on and before November 30, 2004.  See Fed. R. Evid. 404(b).

**Exhibit 24** is a copy of an audit letter from the Federal Motor Carrier Safety Administration dated more than a year after the accident.  The "violations" detailed in the letter would mislead a jury and unduly prejudice Defendants.  The exhibit has no probative value regarding events before the subject accident.  If it is admitted as evidence, the jury is likely to erroneously infer that "violations" in 2005 and 2006 proves that Defendants acted in conformity therewith on and before November 30, 2004.  See Fed. R. Evid. 404(b).

**Exhibit 25** is a draft version of Exhibit 23.  It has nothing whatsoever to do with the events on or before November 30, 2004 and should be excluded from evidence for the same reasons as Exhibit 23.

**Exhibit 26** is a copy of an audit letter from the FMCSA dated April 13, 2001.  Plaintiff apparently intends to offer this hearsay evidence of Defendant's actions in 2000 and 2001 to prove that Defendants acted in conformity therewith in 2004.  It is inadmissible for all of the reasons that exhibits 23, 24 and 25 are inadmissible.

**Exhibit 27** consists of copies of fifty-eight (58) pages of drivers daily logs spanning two months before the subject accident.  Plaintiff apparently seeks to introduce these exhibits in an effort to prove that Defendant's actions in September and October and earlier in November are predictive of his actions on November 30, 2004.  Pursuant to Fed. R. Evid. 404(b), evidence of previous bad acts are not admissible to show action in conformity therewith.

**Exhibit 28** is a list of entries purporting to be credit card transaction summaries produced by a company known as Comcheck.  Plaintiff apparently intends to use those documents to prove the location of Defendant Gerald Pinsonneault at certain times. Copies of those documents were

provided by the card issuer to Sitton Motor Lines and forwarded to Plaintiff's counsel in discovery. However, Sitton Motor Lines cannot vouch for the system used to obtain and interpret the data, authenticate the times or locations set out or verify the information thereon. In fact, Sitton Motor Lines' corporate representative has testified that the times indicated on the records provided by third parties cannot be relied upon because they are known to be inaccurate. (Deposition of Jeff Yarnall, 8/30/07, pp. 259-260). The mere fact that Sitton Motor Lines was provided with copies of the documents and produced them in discovery does not render the documents admissible as evidence unless Plaintiff also lays a foundation from the original source of those records. See Fed. R. Evid. 805: "Hearsay Within Hearsay." The information on the documents is unverified and of completely unknown reliability. The exhibit is not self-authenticating and no person on any party's witness list is qualified to authenticate the information thereon. Defendants would be significantly prejudiced by the display of such inadmissible evidence to the jury. Pursuant to Fed. R. Civ. P. Rules 901 and 902, as well as 802, the document is not admissible as evidence.

**Exhibit 29** is a summary of fuel charges from Comdata. Just like the Comcheck printout labeled as Exhibit 28, the document is not admissible as evidence.

**Exhibit 33** consists of Defendant's trip records for the two months before the accident. Plaintiff apparently seeks to introduce these exhibits in an effort to prove that Defendant's actions in September and October and earlier in November are predictive of his actions on November 30, 2004. Pursuant to Fed. R. Evid. 404(b), evidence of previous bad acts are not admissible to show action in conformity therewith.

**Exhibit 34** is a toll receipt from California ostensibly dated October 5, 2004. Plaintiff apparently seeks to use the receipt to establish the exact time that Defendant crossed a bridge in

Oakland two months before the accident in Kentucky. Of course, Defendant's actions in October are not admissible to prove his actions on November 30, 2004. In addition, the time indicated on the receipt is unverified and of completely unknown reliability. A copy of the document was provided to Sitton Motor Lines and forwarded to Plaintiff's counsel in discovery. However, Sitton Motor Lines cannot authenticate the document, vouch for the accuracy of the toll authority's clock or time stamp or verify any information on the document other than the amount of the toll paid. The document is not self-authenticating and no person on any party's witness list is qualified to authenticate the information thereon. Pursuant to Fed. R. Civ. P. Rules 901 and 902, as well as 802, the document is not admissible as evidence.

**Exhibit 35** is a driver's daily log (duplicative of exhibit 27) showing Defendant's actions on October 5, 2004. Plaintiff apparently seeks to introduce this exhibit to prove that Defendant's actions two months before the accident are predictive of his actions on November 30, 2004. Pursuant to Fed. R. Evid. 404(b), evidence of previous bad acts are not admissible to show action in conformity therewith.

**Exhibit 36** consists of assorted documents purporting to show certain times and locations for Defendant's vehicle. Plaintiff's counsel has indicated that he intends to use those documents to attack the accuracy of the entries on Defendant Gerald Pinsonneault's driver's log. Copies of those documents were provided to Sitton Motor Lines and forwarded to Plaintiff's counsel in discovery. However, Sitton Motor Lines cannot authenticate the documents, vouch for the accuracy of the date, time or locations indicated thereon or verify the information on the documents. With the exception of one page, a driver's daily log from the day before the accident (which Defendant Gerald Pinsonneault could conceivably authenticate), the times indicated on the various documents are unverified and of unknown reliability. The documents

are not self-authenticating and no person on any party's witness list is qualified to authenticate the information thereon. Pursuant to Fed. R. Civ. P. Rules 901 and 902, as well as 802, the documents are not admissible as evidence.

**Exhibit 38** is an automated printout from Defendant's electronic communications system. Plaintiff apparently seeks to use the document to establish the exact times and locations of Defendant's vehicle the day before the subject accident. However, the indicated times are unverified and of unknown reliability. The documents are not self-authenticating and no person on any party's witness list is qualified to authenticate or verify the accuracy and reliability of the time stamps thereon.

**Exhibit 39** is a shipping order from one of Defendant's customers. Plaintiff apparently seeks to use the document to establish the exact time and location of Defendant's vehicle the day before the subject accident. However, the indicated time is unverified and of unknown reliability. The documents are not self-authenticating and no person on any party's witness list is qualified to authenticate the accuracy and reliability of the time stamps thereon.

**Exhibit 41** is a handwritten note setting out Plaintiff's claim for lost earnings. It was apparently created for litigation and consists solely of unreliable, inadmissible hearsay statements with no foundation whatsoever. Even if it could be authenticated, it is nothing more than an out-of court statement offered to prove the truth of the matters asserted thereon. The document is not admissible as evidence.

**Exhibit 43** is a table purporting to show the expectation of life for people of certain ages in 1978. The use of thirty-one (31) year-old demographic data, unless and until authenticated by the testimony of a qualified expert in actuarial calculations, is patently unreliable. Plaintiff's failure to offer any foundation for this exhibit precludes its introduction as evidence.

**Plaintiff's Unnumbered Exhibits**

Plaintiff also listed the a number of items as exhibits "likely to be used at trial." (DE 65, page 6). Although discovery closed more than a year ago and the Court ordered the parties to provide copies of all exhibits no later than March 2, 2009 (DE 60, 1/9/09), Plaintiff never produced copies of the exhibits described below. Therefore, Defendants must speculate, to some extent, the contents of the described exhibits. Defendants object to the use of any exhibit that has not been timely produced in accordance with the Court's orders, and to the following exhibits in particular:

**"Electrical and Electronic Application and Installation Guide"** Rather than retain a qualified expert, Plaintiff apparently hopes to use a hearsay publication of some sort to offer opinions regarding electrical systems. The use of such a publication as evidence would violate the letter and spirit of the rules governing disclosure of expert testimony and the admissibility of scientific or technical knowledge under Fed. R. Evid. 702. In addition, Defendants obviously cannot cross examine a document, nor even prepare to offer rebuttal evidence, especially given the complete absence of disclosure.

**"Programming Cat Electronic Truck Engines"** For the same reasons as in the preceding paragraph, this publication should be excluded from the trial of this action.

**"Medical bills from [Ms.] Osborne's medical providers"** Plaintiff should not be permitted to dump a stack of unauthenticated medical bills into evidence. A "causal connection between an accident and an injury must be shown by medical testimony and the testimony must be that the causation is probable and not merely possible." *Jarboe v. Harting*, 397 S.W.2d 775, 778 (Ky. 1965). Evidence on the issue of causation "must come from the mouth of a qualified member of the medical profession before it can be found as a fact in a court of law." *Kelly*

*Contracting Co. v. Robinson*, 377 S.W.2d 892, 894 (Ky. 1964). KRS §304.39-020(5)(a) creates a presumption in motor vehicle personal injury claims that a medical bill is "reasonable," but no statute or other authority creates any presumption that the medical expense was (1) medically necessary or (2) causally related to a particular event. The bills cannot be admitted, mentioned or shown to a jury unless they have been timely disclosed and until Plaintiff introduces evidence from which the jury can conclude that the services for which each of the bills request payment were medically necessary as a result of the subject accident.

**"Defendants' Personnel File, produced during discovery"** Assuming Plaintiff is referring to Sitton Motor Lines' employment records pertaining to Gerald Pinsonneault, those records are not admissible unless relevant to some material fact at issue in the case. A determination of the admissibility of any particular portion of those records will probably have to await the context of trial.

**"Defendants' Driving Record(s), produced during discovery"** Assuming Plaintiff is referring to the driving history of Gerald Pinsonneault, it is clear that prior and subsequent acts are not admissible to show actions on a particular occasion. In addition, evidence of bad acts twenty years earlier or after the accident at issue in this suit have no probative value and are unduly prejudicial. Those records should be excluded from the trial of this action.

**"Defendants' Maintenance Records, produced during discovery"** Assuming Plaintiff is referring to the maintenance records pertaining to the vehicle operated by Defendant at the time of the subject accident, it is clear that they have no relevance to any material fact in this action. Plaintiff has made no claim, nor disclosed any evidence, that negligent maintenance was involved in the November 30, 2004 accident upon which her claims are based. Plaintiff should

not be permitted to ambush Defendants at trial with unfounded and heretofore unstated claims and allegations.

**"Maps of the states driven in by Gerald Pinsonneault from September 30, 2004 to December 1, 2004"** Plaintiff apparently seeks to spend a great deal of time during time detailing the actions of Defendant September and October and November, 2004. The only purpose for which the time of the Court and counsel will be consumed is to attempt to prove that Mr. Pinsonneault's actions over that time are predictive of his actions on November 30, 2004. Pursuant to Fed. R. Evid. 404(b), evidence of previous acts are not admissible to show action in conformity therewith on a particular occasion. Even if it was somehow admissible, such tedious evidence should be excluded under Fed. R. Evid. 403 as prejudicial, confusing, cumulative and a waste of time.

**"Diagram of the scene of the collision"** Unless it is something that was timely disclosed in discovery and has been properly authenticated, any diagram created for litigation should be excluded from trial.

**"Chart illustrating proportionality of medical costs, physical and economic impairment, and pain and suffering"** Unless it was disclosed in discovery, is relevant to a material issue of fact and has been properly authenticated, the described item should not be used for any purpose at trial. Of course, the measure of damages in a personal injury case should be based upon evidence, not an attorney–created chart of "proportionality."

## Conclusion

For the foregoing reasons, Defendants respectfully submit that the exhibits described above should be excluded from the trial of this case.

        Respectfully submitted,

        FROST BROWN TODD, LLC
        Stockard R. Hickey III

        s/ Stockard R. Hickey III
        400 West Market Street, 32nd Floor
        Louisville, Kentucky  40202-3363
        (502) 589-5400
        rhickey@fbtlaw.com
        Counsel for Defendants Gerald Pinsonneault
        and Sitton Motor Lines, Inc.

## CERTIFICATE OF SERVICE

      I hereby certify that on March 16, 2009, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to David V. Oakes, Esq., davidoakes@saladinolaw.com, d_oakes@bellsouth.net; juliehunt@saladinolaw.com and  James P. Dilbeck, Esq., attorneys@dilbeckandmyers.com.

        s/ Stockard R. Hickey III
        Counsel for Defendants Gerald Pinsonneault
        and Sitton Motor Lines, Inc.

0111281.0547298 791215v1