## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO. 4:07CV-002-JHM**

PAULA OSBORNE                                                 PLAINTIFF
and
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY                           INTERVENING PLAINTIFF

V.

GERALD PINSONNEAULT
and
SITTON MOTOR LINES, INC.                                    DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' motion in limine to exclude unauthenticated medical expenses and summaries [DN 69]; on a motion in limine to exclude evidence of settlement negotiations [DN 70]; on a motion in limine to exclude evidence of unrelated acts [DN 71]; on a motion in limine to exclude evidence of subsequent remedial measures [DN 72]; on a motion in limine to exclude evidence of insurance, indemnity and joint and several liability from the trial of this action [DN 73]; on a motion in limine to exclude certain proposed exhibits [DN 76]; and on a motion to file reply memoranda [DN 94]. Fully briefed, these matters are ripe for decision. For the reasons set forth below, the motions in limine by Defendants are **granted in part and denied in part.**

### Motion in Limine to Exclude Unauthenticated Medical Expenses
### and Summaries [DN 69]

Defendants seek to exclude from evidence any unauthenticated medical bills and

summaries of medical expenses.  Defendants argue that before showing or mentioning summaries or bills for medical expenses to the jury, the Plaintiff must present competent evidence that each of the expenses were medically necessary and were causally related to the subject accident.  Defendants argue that the Plaintiff's testimony alone is not sufficient to establish the admissibility of the medical records, but instead expert opinion is necessary. The Court disagrees.  The Kentucky Supreme Court has recognized that an automobile accident victim's medical bills are admissible "without expert proof that they were necessary for and related to treatment for injuries caused by [the] accident." Cincinnati Insurance Company v. Samples, 192 S.W.3d 311, 318 (Ky. 2006)(citing Daugherty v. Daugherty, 609 S.W.2d 127, 128 (Ky. 1980)(noting the statutory presumption in KRS 304.39-020(5)(a) that any medical bill submitted is reasonable).  Thus, at the trial, Plaintiff may testify that she received medical treatment from a medical provider related to the injuries she allegedly sustained in the accident and she can submit the bill she received from that medical provider. However, introduction of Plaintiff's medical records by counsel without any corresponding testimony by Plaintiff or other qualified witness will not be permitted. For these reasons, Defendants' motion in limine is **denied**.

### Motion in Limine to Exclude Evidence of Settlement Negotiations [DN 70]

Defendants move this Court to exclude from the trial any evidence of settlement negotiations or that the claims of Plaintiff Carolyn McNeil were settled prior to the trial. Plaintiff did not respond to this motion.  Thus, Defendants' motion to exclude evidence of settlement negotiations is **granted**.

2

**Motion in Limine to Exclude Evidence of Unrelated Acts [DN 71]**

Defendants move to exclude from evidence any mention of unrelated acts pursuant to Fed. R. Evid. 404(b).

A.  Previous Traffic Violations and Misdemeanor Conviction

Defendants seek to exclude any evidence at trial that Mr. Pinsonneault used marijuana in 1971, was convicted of a DUI in the 1980s, bounced a check in 1982, and received a speeding ticket in 1992.  With respect to the first phase of the trial,[1] evidence that Mr. Pinsonneault committed misdemeanors, received traffic citations, or used marijuana in 1971 is not relevant to Plaintiff's negligence claim against Mr. Pinsonneault and is excluded.  With respect to the second phase of trial, this evidence is relevant to the negligent entrustment, supervision, and training claims made against Sitton Motor Lines and the probative value of this evidence outweighs the risk of unfair prejudice.

B.  2007 Logbook Falsifications

Defendants also seek to exclude any evidence at trial that Mr. Pinsonneault made erroneous logbook entries in 2007.  Evidence of these logbook entries is excluded.  Any erroneous logbook entries by Mr. Pinsonneault that occurred after the accident in question are not relevant to whether he was negligent on the day in question or whether Sitton Motor Lines was negligent in its entrustment, supervision or training of Mr. Pinsonneault.

---

[1]Currently, the negligence claim against Gerald Pinsonneault and the negligent entrustment, supervision and training claim against Sitton Motor Lines are bifurcated.  The Court has agreed to reconsider the bifurcation of these claims upon written motion by Plaintiff.

C.  Pre-Accident Logbook Falsifications

Defendants seek to exclude any evidence at trial that Mr. Pinsonneault made an erroneous logbook entry in California eight weeks before the subject accident and failed to make a logbook entry three days before the accident.  Defendants argue that evidence of incidents that occurred days or weeks before the accident in question is not relevant to any issue in this action and is not probative of any fact material to the action.  Instead, this evidence is offered to prove the character of a Mr. Pinsonneault in order to show action in conformity therewith in violation of Rule 404(b).

With respect to the admissibility of this evidence against Sitton, it is clearly relevant to Plaintiff's negligent entrustment, supervision and training claim.  The competence and fitness of the driver and the knowledge of the employer are central issues to be determined in such a claim.  It is intrinsic evidence and not extrinsic 404(b) evidence.

With  respect to the admissibility of this evidence against Mr. Pinsonneault, the Court agrees that part of the evidence is extrinsic and not admissible against Mr. Pinsonneault to show that he falsified his log book on or about the time of the accident. Plaintiff contends that the record demonstrates an habitual pattern of log book falsification. Contrary to the Defendants' argument, the evidence of previous logbook falsifications and/or errors during the week before the accident are not impermissible "other act" evidence excludable pursuant to Rule 404(b).  Evidence of logbook falsifications a week prior to the accident is not admissible to prove that Mr. Pinsonneault falsified his logbook on the day of the accident, however, it may be introduced for another purpose.  This evidence is direct evidence of Mr.

4

Pinsonneault's fatigue on the afternoon in question, and thus, intrinsic to Plaintiff's claims of negligence against Mr. Pinsonneault.  In support of her negligence claim, Plaintiff intends to present evidence that Mr. Pinsonneault drove more hours than he was permitted to drive under the Federal Motor Carrier Safety Regulations, that he falsified his logbooks to cover up his alleged violations, and that Sitton Motor Lines incorrectly instructs its drivers to record their activity in 30 minute intervals, instead of the 15-minute segments as required by the graph grid contained in the regulations.  Additionally, Plaintiff also intends to elicit testimony from Sitton Motor Lines' corporate representative and Safety Director, Jeffrey Yarnall, regarding the effects of fatigue build up over time.  Based upon this evidence, Plaintiff claims that Mr. Pinsonneault's actions, coupled with Sitton Motor Lines' improper recording of drivers' activities, created a situation in which Mr. Pinsonneault was fatigued causing the accident on November 30, 2004.  As a result, the Court finds that evidence of previous logbook falsifications by Mr. Pinsonneault in the week prior to the accident is relevant to the negligence claim against Mr. Pinsonneault and properly admissible.

However, any evidence of logbook falsifications prior to that time, i.e. erroneous logbook entry on October 5, 2004, is too remote in time to be relevant to the issue of whether Mr. Pinsonneault was fatigued on the day of the accident and properly excluded with respect to Plaintiff's negligence claim pursuant to Rule 404(b).

Finally, the Court disagrees with the Plaintiff's argument that this evidence is admissible as habit evidence under Fed. R. Evid. 406.  Under that rule, a plaintiff must show that "'the behavior at issue occurred with sufficient regularity making it more probable than

5

not that it would be carried out in every instance or in most instances.'" Bell v. Consolidated Rail Corp., 299 F. Supp.2d 795, 800 (N.D. Ohio. 2004)(citing U.S. v. Newman, 982 F.2d 665, 668 (1st Cir. 1992)).   "Rule 406 evidence must 'rest on an analysis of instances numerous enough to [support] an inference of systematic conduct and to establish one's regular response to a repeated specific situation.'" Id.  Before a court may admit evidence of habit, "'the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature.'" Id. (citing Bowman v. Corrections Corp. of America, 350 F.3d 537, 549 (6th Cir. 2003)).

In response to the motion in limine, while characterizing Mr. Pinsonneault's falsifications as habitual, Plaintiff failed to identify specific instances of logbook falsifications by Mr. Pinsonneault.  Without establishing the frequency of the falsifications, it cannot be said that Mr. Pinsonneault's falsification of logbooks is numerous enough to constitute "conduct that is 'semi-automatic' in nature" and therefore, this evidence is not admissible as habit evidence pursuant to Rule 406.  Id.

For these reasons, the motion in limine by Defendants is **granted in part and denied in part**.

### Motion in Limine to Exclude Evidence of Subsequent Remedial Measures [DN 72]

Defendants seek to exclude Sitton Motor Lines' post-accident actions including its internal audits, safety review determination and personnel actions with respect to its

employee Gerald Pinsonneault.  Defendants contend that this evidence constitutes subsequent remedial measures and is not admissible pursuant to Fed. R. Evid. 407.

The fact that the company classified the accident in question as "preventable" is not an admission of fault for the accident and is not relevant to prove the negligence of Pinsonneault or the negligent entrustment, training or supervision by Sitton Motor Lines. Fed. R. Evid. 401, 402.  Similarly, Sitton Motor Lines post-accident personnel actions, i.e. counseling, supplemental training, additional road test, and six month disciplinary probation, are not relevant to prove the negligence of Pinsonneault or the negligent entrustment, training or supervision by Sitton Motor Lines of Pinsonneault prior to the accident in question. Finding that this information is not relevant, the Court **grants** Defendants' motion to exclude the post-accident actions identified in the motion in limine and grants Defendants' motion to exclude Plaintiff's Exhibit 20 ("Termination Record").

### Motion in Limine to Exclude Evidence of Insurance, Indemnity and Joint and Several Liability [DN 73]

Defendants move to exclude from the trial any evidence of Defendants' insurance coverage, indemnification or joint and several liability.  Plaintiff did not respond to this motion.  Thus, Defendants' motion to exclude evidence of Defendants' insurance coverage, indemnification or joint and several liability is **granted**.

### Motion in Limine to Exclude Certain Proposed Exhibits [DN 76]

Defendants have sought to exclude certain of Plaintiff's proposed exhibits.  The Court will address each in turn.

7

1.   The motion by Defendants to exclude the expert report of Dr. Gilbert Mathis, Plaintiff's Exhibit 3, is **granted**.   The written report of expert witnesses prepared in anticipation of trial are generally inadmissible because they are considered hearsay.   Wright v. Premier Elkorn Coal Co., 16 S.W.3d 570, 572 (Ky. App. 1999); Engebretsen v. Fairchild Aircraft Corp., 21 F.3d 721, 729 (6th Cir. 1994)(citing Fed. R. Evid. 702 & 703).   With respect to Dr. Mathis' use of the charts and summaries contained in the expert report at trial, the motion is denied.   The Sixth Circuit has an "established tradition" of permitting the use of demonstrative exhibits that summarize evidence as an aid to the jury.   United States v. Bakke, 942 F.2d 977, 985-986 (6th Cir. 1991); Fed. R. Evid. 1006.   The Court will permit the use of these summaries or charts as demonstrative exhibits.

2.   The motion by Defendants to exclude Plaintiff's Exhibit 4 (Letter to Gary Alexandar regarding Plaintiff's work losses) is **granted**.   Contrary to Plaintiff's argument, the letter from Plaintiff's employer is not a summary or chart admissible pursuant to Fed. R. Evid. 1006, but instead is hearsay.   Fed. R. Evid. 801(c), 802.

3.   The motion by Defendants to exclude Plaintiff's Exhibit 5 (Portion of Sitton Motor Lines' "Driver's Guide") is **denied**.   At trial, Plaintiff may properly question Sitton Motor Lines' corporate representatives about the 2007 Driver's Guide as counsel did at Sitton Motor Lines' Safety Director Jeffrey Yarnall's deposition, including the representative's familiarity with the pamphlet, whether the pamphlet is given to drivers for Sitton Motor Lines, and whether the representative agrees or disagrees with the statements regarding fatigue contained in the pamphlet.   While the Plaintiff may question witnesses about the

pamphlet, the pamphlet will not be received as an exhibit.

4.  The motion by Defendants to exclude Plaintiff's Exhibit 7 (a copy of 49 C.F.R. § 395.8) is **granted**.  The Plaintiff may introduce the Graph Grid contained in the regulation.

5.  The motion by Defendants to exclude Plaintiff's Exhibit 8 (Letter to Sitton Motor Lines demanding preservation of evidence) and Plaintiff's Exhibit 9 (Plaintiff's Notice to Take Deposition of Corporate Representative) is **granted**.  Contrary to Plaintiff's argument, these exhibits do not demonstrate evidence of Defendants' alleged spoliation and are not admissible in the trial of this matter.  These exhibits merely reflect that Plaintiff's counsel requested Defense counsel to preserve the records related to the accident in question and noticed the deposition of Sitton's corporate representative. Whether there will be evidence sufficient to warrant a missing evidence instruction will be decided at trial.  See Monsanto Co. v. Reed, 950 S.W.2d 811, 815 (Ky. 1997) ("Where the issue of destroyed or missing evidence has arisen, we have chosen to remedy the matter through evidentiary rules and 'missing evidence' instructions.") Tinsley v. Jackson, 771 S.W.2d 331, 332 (Ky. 1989); One Beacon Insurance Co. v. Broadcast Development Group, Inc., 147 Fed. Appx. 535, 540 (6th Cir. 2005).

6.  The motion by Defendants to exclude Plaintiff's Exhibit 10 (Cat Electronic Technician Printout) is **denied.**  This document "Cat Electronic Technician 2004B-D3, Total Time vs. Vehicle Speed" reflects the percentage of hours for which Mr. Pinsonneault's vehicle traveled at certain speeds.  The report was generated on April 6, 2005.  This report is not relevant to the issue of whether Gerald Pinsonneault was negligent on the date in

question. Mr. Pinsonneault's calculated vehicle speed between September of 2004 and April of 2005 does not demonstrate that he was negligent on November 30, 2004. Additionally, given the date of the report, this exhibit is likewise not relevant to the negligent entrustment, supervision, and training claims against Sitton Motor Lines. Mr. Pinsonneault's conduct after the accident in question has no bearing on the claims against Sitton Motor Lines.

However, Exhibit 10 may be relevant to support Plaintiff's request for a missing evidence instruction. In response to the motion in limine, Plaintiff argues that Exhibit 10 demonstrates that data from the electronic control module in the truck recorded the speed of the truck at the time of the accident in question and that Sitton Motor Lines has refused to turn over this "Quick Stop Recorder" information. At trial, Plaintiff can properly question the corporate representatives regarding whether or not Sitton Motor Lines had available to it the ability to determine the speed of the vehicle at the time of the impact, whether Sitton acquired the Quick Stop Recorder information, and if not, the reasons for its failure. Depending on the testimony, Plaintiff may be permitted to utilize this exhibit in questioning Sitton's representative with respect to the alleged missing evidence.

7. The motion by Defendants to exclude Plaintiff's Exhibit 11 ("Violations Summary Report") is **denied**. Exhibit 11 is a summary of the results of a paperwork audit conducted by Sitton Motor Lines in February of 2005. It lists without explanation every technical violation of the Federal Motor Carrier Safety Regulations by Mr. Pinsonneault over the period of his employment, including violations before and after the accident at issue in this case. This document contains no indication of the dates or details of these violations. Given

10

that the Violations Summary Report contains data reflecting violations after the accident in question, the Court finds that the document contains irrelevant information. Fed. R. Evid. 401, 402. The post-accident actions of Mr. Pinsonneault were not available to Sitton Motor Lines at the time of the accident and are irrelevant to a determination of whether Sitton Motor Lines was negligent in entrusting, supervising or training Mr. Pinsonneault. Similarly, any violations by Mr. Pinsonneault that occurred after the accident in question are not relevant to whether he was negligent on the day in question.

In response to the motion in limine, Plaintiff also argues that Exhibit 11 indicates that Sitton Motor Lines "had means or methods for auditing drivers' logbooks that it has still not shared with Plaintiff's counsel." (Response at 12). Plaintiff implies that Exhibit 11 could support a missing evidence instruction. Exhibit 11 by itself is not proof of "destroyed or missing evidence" warranting such an instruction. However, its existence gives rise to questions which Plaintiff may explore at trial. It may be necessary to show a witness the exhibit, however, the Court will decide at trial whether Exhibit 11 will be allowed to be introduced.

8. The motion by Defendants to exclude Plaintiff's Exhibit 12 ("Pre-employment Offer Questionnaire"), Exhibit 14 ("Integrity Interview"), Exhibit 17 (Driver File Activity Sheet), and Exhibit 18 (Pinsonneault 2007 Employment Application) is **granted in part and denied in part**. Exhibits 12 and 14 are Mr. Pinsonneault's employment questionnaires for his original employment with Sitton Motor Lines starting in September of 2004. Exhibit 17 is a 2007 driver file activity sheet for Mr. Pinsonneault and Exhibit 18 is Mr. Pinsonneault's

2007 employment application.  Some of these questionnaires reflect Mr. Pinsonneault's previous use of marijuana in 1971, a DUI in 1986, and a misdemeanor charge for writing a bad check.

With respect to the negligence action against Mr. Pinsonneault, these questionnaires are excluded pursuant to Fed. R. Evid. 404(b) as prior bad acts.  With respect to the negligent entrustment, supervision or training claim against Sitton Motor Lines, the Court finds that Exhibits 12 and 14 are relevant demonstrating, among other things, Sitton Motor Lines' knowledge that Mr. Pinsonneault lied on his original employment application.  These records are admissible under either Fed. R. Evid 801(d)(2) as an admission of a party opponent or under the business records exception pursuant to Fed. R. Evid. 803(6).  However, Exhibits 17 and 18 are not relevant to Plaintiff's claim for negligent entrustment, supervision or training.  These exhibits are related to Sitton Motor Lines' subsequent rehire of Plaintiff in 2007.  Sitton Motor Lines' conduct after the accident in question has no relevance to Plaintiff's claims.

9.  The motion by Defendants to exclude Plaintiff's Exhibit 19 ("Sitton Motor Lines, Inc. Disciplinary Action") is **granted**.  Evidence of disciplinary action taken by Sitton Motor Lines against Mr. Pinsonneault in July of 2008 as a result of a log audit is not related to the 2004 accident that is the subject of the suit and, therefore, is not relevant to Plaintiff's claims for negligence, negligent entrustment, or punitive damages.

10.  The motion by Defendants to exclude Plaintiff's Exhibits 21, 23, 24, 25, 26, and 41 is **granted**.  The Plaintiff did not respond to these objections.

11.   The motion by Defendants to exclude Plaintiff's Exhibit 27, Exhibit 33, and Exhibit 35 is **granted in part and denied in part**.   Exhibit 27 is a copy of Mr. Pinsonneault's daily logs for the two months before the subject accident, September 30 to December 1, 2004.   Exhibit 33 is a copy of Mr. Pinsonneault's trip records for the two months before the accident.   Exhibit 35 is a copy of Mr. Pinsonneault's daily log for October 5, 2004.   Defendants argue that these exhibits are evidence of previous bad acts and are not admissible pursuant to Fed. R. Evid. 404(b).   In response, Plaintiff contends that the log books and associated fuel records and credit card receipts are relevant to show that Mr. Pinsonneault worked all hours of the day and night, kept inaccurate records of his work activities, and lied about his work activities repeatedly which demonstrates that the accident was caused by months of fatigue.

For the reasons set forth above, the Court concludes that Mr. Pinsonneault's logbooks and trip records the week prior to the accident in question do not qualify as prior bad acts, are relevant to Plaintiff's negligence claim, and thus are admissible.   The remainder of Mr. Pinsonneault's logbooks and trip records contained in Exhibits 27, 33 and 35 are not relevant to the Plaintiff's negligence claim and are excluded pursuant to Fed. R. Evid. 404(b) from phase one of the trial.   However, with respect to Plaintiff's claims against Sitton Motor Lines, all of Mr. Pinsonneault's logbooks and trip records are relevant to Plaintiff's negligent entrustment, supervision and training claim and are admissible.

12.   The motion by Defendants to exclude Plaintiff's Exhibit 28 (credit card transaction summaries from Comcheck) and Plaintiff's Exhibit 29 (summary of fuel charges

from Comdata) is **reserved**.

Defendants seek to exclude these exhibits arguing that these documents constitute hearsay and are not admissible. Specifically, Defendants argue that these documents were provided to Sitton Motor Lines from another company and Sitton Motor Lines cannot vouch for the system used to obtain and interpret the data, authenticate the times or locations set out, or verify the information therein. In response to the motion in limine, Plaintiff argues that these business records, along with the logbooks and the trip records, are relevant to show that Mr. Pinsonneault worked all hours of the day and night, kept inaccurate records of his work activities, and lied about his work activities repeatedly demonstrating that the crash was caused by months of fatigue. According to Plaintiff, the corporate representative and Safety Director, Jeffrey Yarnall, has testified that the records to which defense counsel now objects could all be used to verify the accuracy or inaccuracy of driver logbooks.

Plaintiff failed to address Defendants' argument that these documents constitute hearsay. From a review of the rules, Rule 803(6)[2], the business record exception, appears as

---

[2]  Fed. R. Evid. 803(6) provides:
Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

14

the most relevant hearsay exception to permit admission of the credit card transaction summaries and the fuel charge summaries.  These exhibits do not appear to be records created by Sitton Motor Lines, but instead records generated by Comcheck and Comdata.

A business record must satisfy four requirements in order to be admissible under Rule 803(6):  (1) it must have been made in the course of a regularly conducted business activity; (2) it must have been kept in the regular course of that business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.  Cobbins v. Tennessee Dept. of Transp., 2009 WL 899967, *3 (6th Cir. April 2, 2009); United States v. Baker, 458 F.3d 513, 518 (6th Cir. 2006).  "This information must be presented through the testimony of the custodian or other qualified witness" or by certification that complies with Rules 902(11) and 902(12).  Baker, 458 F.3d at 518.

Additionally, under certain circumstances, courts have recognized that records a business receives from a third-party are admissible under Rule 803(6) when those records are kept in the regular course of the receiving company's business, relied upon by that business, and there are other circumstances indicating the trustworthiness of the records. See, e.g., Air Land Forwarders, Inc. v. United States, 172 F.3d 1338, 1343 (Fed. Cir. 1999); MRT Const., Inc. v. Hardrives, Inc., 158 F.3d 478, 483 (9th Cir. 1998); Price v.

Commonwealth, 2003 WL 21554559 (Ky. App. 2003).[3]  In such a case, courts have

permitted the proponent of the evidence to lay the foundation for admissibility of this type

of business record through the testimony of a qualified witness from the receiving company.

Id.

The Plaintiff has failed to articulate how she intends to lay the requisite foundation

for this evidence to be admitted under the business record exception to the hearsay rule.  Fed.

R. Evid. 803(6).  The Court reserves ruling pending the presentation at trial of a proper

foundation for the admission of Exhibits 28 and 29.

13.  The motion by Defendants to exclude Plaintiff's Exhibit 34 ("Toll Receipt") is

**granted in part and reserved in part**.  Plaintiff seeks to introduce this toll receipt dated

October 5, 2004, as evidence that Mr. Pinsonneault falsified his logbook on that date.  For

the reasons set forth above, evidence of Mr. Pinsonneault's logbook falsification on October

5, 2004 is not relevant to Plaintiff's negligence claim and is excluded pursuant to Rule

404(b).

---

[3] In Air Land Forwarders, the United States Court of Federal Claims stated in relevant
part:
> Rule 803(6) does not require that the document actually be prepared by the
> business entity proffering the document. Rather, the cases stress two factors,
> indicating reliability, that would allow an incorporated document to be admitted
> based upon the foundation testimony of a witness with first-hand knowledge of
> the record keeping procedures of the incorporating business, even though the
> business did not actually prepare the document. The first factor is that the
> incorporating business rely upon the accuracy of the document incorporated and
> the second is that there are other circumstances indicating the trustworthiness of
> the document.

Id. at 1343.

However, as discussed above, evidence of Mr. Pinsonneault's logbook falsification is relevant to Plaintiff's negligent entrustment, supervision and training claim. Defendants also object to the admissibility of the toll receipt arguing that it is hearsay and has not been authenticated. The Court will reserve ruling on the admissibility of the document for use in the second phase of the litigation subject to the Plaintiff laying the proper foundation.

14. The motion by Defendants to exclude Exhibit 36 (assorted documents) is **reserved** as well. Some of the pages in Exhibit 36 appear to be duplicates of exhibits discussed above (pages 1, 2, and 5). Page 3 ("Certified Automated Truck Scale" Receipt dated 11/29/04) and Page 4 ("Shipping Order" dated 11/29/04) of Exhibit 36 appear to be documents reflecting dates, times, and/or location of Mr. Pinsonneault on the day before the accident in question. Defendants object to these documents arguing that the documents are hearsay and are not self-authenticating. While these documents appear to be relevant, the Court will reserve ruling on the admissibility of Pages 3 and 4 subject to Plaintiff laying the proper foundation. Page 6 of Exhibit 36 is a portion of a "Root Cause Analysis Interview" (Plaintiff's Exhibit 22) conducted by Jeffrey Yarnall on Wednesday, December 1, 2004 with Mr. Pinsonneault. This document reflects statements made by Mr. Pinsonneault to Mr. Yarnall regarding his activity the week of the accident. Mr. Yarnall will be a witness at the trial and can be asked about the statements of Mr. Pinsonneault pursuant to Fed. R. Evid. 801(d)(2)(A).

15. The motion by Defendants to exclude Plaintiff's Exhibit 38 ("Check Calls for Driver Gerald Pinsonneault") is **denied**. Unless the Court is incorrect, this exhibit appears

to be an automated printout from Defendants' own electronic communications system and can be properly introduced through Sitton Motor Lines' corporate representative.  Any questions with respect to the reliability of the exhibit goes to the weight of the evidence and not admissibility.  If it is not from Defendants' own system, and instead, received from a third party, it may nevertheless be admissible as a business record if the proper foundation is made.

16.  The motion by Defendants to exclude Plaintiff's Exhibit 39 ("Shipping Order" dated 11/29/2004) is **reserved** for the reasons set forth above.  Exhibit 39 is page 4 of Exhibit 36 which the Court previously addressed above.

17.  The motion by Defendants to exclude Plaintiff's Exhibit 43 ("Mortality Table") is **reserved**.    Plaintiff correctly notes that courts may properly take judicial notice of mortality tables.  Polley v. Allen, 132 S.W.2d 223, 226 n. 3 (Ky. App. 2004)(citing Morris v. Morris, 293 S.W.2d 243, 244 (Ky. 1956)).  However, the mortality table submitted by Plaintiff does not indicate the source of the mortality table.  Additionally, the table does not appear to be a current mortality table.

18.  The motion by Defendants to exclude the "Electrical and Electronic Application and Installation Guide" and "Programming Cat Electronic Truck Engines" is **granted**. Defendants represent that they did not receive a copy of this exhibit in discovery. Additionally, the Court rejects Plaintiff's argument that it can properly take judicial notice of the information contained in these commercial publications.  Polley v. Allen, 132 S.W.3d 223 (Ky. App. 2004).  While the Court has not been provided these documents, Plaintiff

represents that these manuals were obtained from the internet from the private websites operated by Cleveland Brothers Equipment Company and Caterpillar, Inc. Plaintiff is correct that "[a] court may properly take judicial notice of public records and government documents, including public records and government documents available from reliable sources on the internet." Id.   However, from Plaintiff's representations it is clear that this information was obtained from a private website and are not public records or government documents.   Thus, the Court cannot verify the information found on these websites for accuracy and authenticity, these documents are not proper candidates for judicial notice.

19.   The motion by Defendants to exclude "Defendants' Personnel File" "Defendants' Driving Record(s)," and "Defendants' Maintenance Records" is **granted in part and reserved in part.**   The Plaintiff's exhibit list stated that the documents are likely to be used at trial by reading them into evidence, shown for demonstrative purposes or for impeachment.   If Plaintiff intended to use any portion of these records in her case in chief, those documents should have been specifically designated, numbered and disclosed.   Her failure to do so will exclude them from her case.   However, the records may be used for impeachment, and the admissibility of any particular portion of these records for impeachment will be decided upon at trial.

20.   The Defendants seek to exclude "Maps of the states driven in by Gerald Pinsonneault from September 30, 2004 to December 1, 2004," a "Diagram of the scene of the collision" and a "Chart illustrating proportionality of medical costs, physical and economic impairment, and pain and suffering."   Defendants represent that they have not been

19

provided a copy of these exhibits.  Plaintiff did not address this particular argument.  The Court's January 9, 2009 Scheduling Order ordered the parties to provide copies of all exhibits, including demonstrative ones, no later than March 2, 2009.  Immediately upon receipt of this Order, Plaintiff shall provide a copy of these exhibits to the Defendants.  The motion to exclude these exhibits is **reserved**.  At trial, the Court will determine if Defendants have suffered any prejudice due to late disclosure.

### Motion in Limine to File Reply Memoranda [DN 94]

Defendants move the Court for leave to file reply memoranda with respect to its motions in limine.  Defendants filed four replies on March 30, 2009.  The Court's January 9, 2009 Order, stated that no replies are permitted.  For these reasons, the Court denies Plaintiff's motion to file reply briefs and strikes the briefs previously filed [DN 90, DN 91, DN 92, DN 93].

cc: counsel of record